UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LINDA S. MORRIS,

        Plaintiff,                               Case No.  1:16-cv-433

v.

                                           HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner).  Plaintiff seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled.

### STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was thirty-three years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.57, 139.) She attended special education classes, and received a high school diploma in June 2008. (PageID.109, 221.) Plaintiff previously has been employed as a cashier-checker and as a conveyor feeder. (PageID.127.) Plaintiff applied for benefits on March 14, 2013, alleging disability beginning February 1, 2009, due to degenerated discs in her mid back, scoliosis, bone spurs, a learning disability, only second grade reading, spelling, and math levels, and

2

carpal tunnel syndrome.  (PageID.139, 202–203.)  Plaintiff's application was denied on June 28, 2013, after which time she requested a hearing before an ALJ.  (PageID.152–157.)  On November 17, 2014, Plaintiff appeared with her representative before ALJ Christopher Helms for an administrative hearing with testimony being offered by Plaintiff, Ms. Carlyn Morris (Plaintiff's mother-in-law), and a vocational expert (VE).  (PageID.76–137.)  In a written decision dated January 20, 2015, the ALJ determined that Plaintiff was not disabled.  (PageID.57–75.)  On February 24, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter.  (PageID.45–50.)  Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on September 30, 2013. (PageID.139.)  To be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status.  *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. § 404.1520(a-f).[1]  If the Commissioner can make a dispositive finding at

---

[1]1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

any point in the review, no further finding is required.  *See* 20 C.F.R. § 404.1520(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*

ALJ Helms determined Plaintiff's claim failed at the fifth step of the evaluation.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged disability onset date and her date last insured.  (PageID.62–63.)  At step two, the ALJ determined Plaintiff had the severe impairments of scoliosis of the thoracic spine; degenerative changes of the cervical and lumbar spine; bilateral carpal tunnel syndrome; migraine headaches; and a history of special education.  (PageID.63.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of any listing in the Listing of Impairments.  (PageID.63–66.)  At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments, through her date last insured, to perform:

> light work as defined in 20 CFR 404.1567(b) except that the claimant could only occasionally handle and finger bilaterally.  The claimant could occasionally stoop, kneel, crouch, and crawl.  The claimant

---

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

> could tolerate only moderate noise; and work that did not require
> direct exposure to sunlight. The claimant was limited to simple,
> routine, and repetitive tasks requiring only simple work-related
> decisions; and could handle very few changes in the work setting.

(PageID.66.) Continuing with the fourth step, the ALJ found that Plaintiff was unable to perform

any of her past relevant work. (PageID.70–71.) At the fifth step, the ALJ questioned the VE to

determine whether a significant number of jobs exist in the economy that Plaintiff could have

performed through her date last insured, given her limitations. *See Richardson*, 735 F.2d at 964.

The VE testified that Plaintiff could perform other work as a surveillance systems monitor (1,900

regional and 85,000 national positions), and as a callout operator (1,100 regional and 32,000 national

positions). (PageID.128–134.) Based on this record, the ALJ found that Plaintiff was capable of

making a successful adjustment to work that exists in significant numbers in the national economy.

(PageID.71–72.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from February 1,

2009, the alleged disability onset date, through September 30, 2013, Plaintiff's date last insured.

(PageID.72.)

## DISCUSSION

Plaintiff has filed an initial brief contending that the ALJ's decision contains legal

errors and is not supported by substantial evidence for four primary reasons. (ECF No. 14.) The

Commissioner has also filed a brief, asserting that the issues raised in Plaintiff's brief are meritless.

(ECF No. 15.) Plaintiff has filed a reply brief maintaining that the Commissioner has failed to

demonstrate the ALJ's decision is supported by substantial evidence. (ECF No.16.)[2]

---

[2] The Court observes that even leaving aside the certificate of service, Plaintiff's reply brief is eight pages in length–three pages over the page limit for reply briefs that this Court has imposed in this case. (*See* ECF No. 11.) Plaintiff's counsel is cautioned that future briefs failing to comply with this Court's briefing requirements may be

1.    **The ALJ's Evaluation of Listing 12.05(c).**

The Listing of Impairments, detailed in 20 C.F.R., Pt. 404, Subpt. P, App. 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled.  A claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  In order to be considered disabled under the Listing of Impairments, "a claimant must establish that [her] condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that [her] condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *see, e.g.*, *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency").

Plaintiff argues that she is entitled to relief because the ALJ improperly determined that she does not satisfy Listing 12.05(C) (Intellectual Disability) of the Listings.[3]  Listing 12.05 provides, in pertinent part, as follows:

stricken.

[3] The title of the listing has recently been changed from "Mental Retardation' to "Intellectual Disability."  The change has had no substantive effect.

12.05   Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\*\*\*

C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function[.]

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05.  Accordingly, "a claimant must make three showings to satisfy Listing 12.05(C): (1) [s]he experiences significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period (i.e., the diagnostic description); (2) [s]he has a valid verbal, performance, or full scale IQ of 60 through 70; and (3) [s]he suffers from a physical or other mental impairment imposing an additional and significant work-related limitation of function." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697–98 (6th Cir. 2007) (internal quotation marks and brackets omitted).

The ALJ discussed the listing in relevant part as follows:

Finally, the "paragraph C" criteria of Listing 12.05 were not met because the claimant did not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  The claimant recently attended an evaluation in September 2014 with Paul Kitchen, Ph. D.  Dr. Kitchen administered the WAIS-IV upon which the claimant obtained a full-scale IQ score of 66 that placed her in the extremely low range.  Dr. Kitchen found that the claimant put forward a valid effort.  Yet, Dr. Kitchen noted that the claimant had obtained her high school diploma through adult education (Exhibit 5F).  The claimant also has a history of past relevant work, including work at the semiskilled exertional level, which is inconsistent with the IQ score.  The undersigned notes that there is no record of an IQ score between 60 and 70 prior to age 22.

7

> The claimant further had no evidence of the requisite adaptive deficits prior to age 22.  In particular, the claimant stated in the Function Report that she took care of her daughter and had no issues handling her own personal needs.  The claimant indicated that she heated up food and handled the household chores with assistance (Exhibit 4E).  At the hearing, the claimant testified that she has a driver's license and a high school diploma.  The vocational expert noted that the claimant's past relevant work is at the unskilled and semiskilled level (Hearing Testimony).

(PageID.65–66.) Plaintiff argues that she meets all the requirements of Listing 12.05(C). The Court finds however, that Plaintiff has not demonstrated she meets the initial threshold requirement of demonstrating deficits in her adaptive functioning prior to the age of 22.  As such, the ALJ's determination that Plaintiff does not meet a listed impairment is supported by substantial evidence.

Plaintiff is correct that she was not required to produce an IQ score from before the age of 22 in order to satisfy this element of the listing.  *See West*, 240 F. App'x at 698. Nevertheless, it was still Plaintiff's burden of putting forward evidence establishing such deficits prior to the age of twenty-two.  Here, Plaintiff points to the fact that she was attending special education classes and received assistance from her family in obtaining her high school diploma as evidence of her deficits in adaptive functioning.  (PageID.566–567.)  However, the Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes v Comm'r of Soc. Sec.*, 357 F. App'x 672, 676–77 (6th Cir. 2009); *see also Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) (collecting cases).  That is because "[a]daptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *See West*, 240 F. App'x at 698.

> [B]y definition, [intellectual disability] has its onset during a person's developmental period. [Intellectual disability,] furthermore, results

> in deficits or impairments in adaptive functioning, that is to say, the
> person's effectiveness in areas such as social skills, communication,
> and daily living skills, and how well the person meets the standards
> of personal independence and social responsibility expected of his or
> her age by his or her cultural group.

*Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)(internal quotation marks omitted).  A review of the record shows that Plaintiff's effectiveness in these areas is not as diminished as Plaintiff claims. While Plaintiff did attend special education classes, when she regularly attended these classes, she did well.  (PageID.269.)   Though she claims she was let go from previous employment for miscounting change, she was nonetheless able to hold such jobs for a number of years. (PageID.357.)  The ability to engage in these activities would indicate that Plaintiff's impairments do not meet listing level severity.  *See Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009); *see also Cheatum v. Astrue*, 388 F. App'x 574,  576 (8th Cir. 2010); *Gulch v. Comm'r of Soc. Sec.*, No. 1:11–cv–21, 2012 WL 651731, at *7 (W.D. Mich. Feb. 28, 2012) ("[T]he fact that Plaintiff maintained employment throughout much of her adult life is inconsistent with the conclusion that she is [intellectually disabled]" and "indicates that Plaintiff did not experience deficiencies in adaptive functioning prior to age 22, or thereafter for that matter.").

Moreover, on her function report Plaintiff reported being able to care for her daughter and that she could let the family dog out when her husband was gone.  (PageID.242.)  She also had no problems handling her personal care.  (PageID.242.)  Plaintiff could prepare soups, sandwiches, and frozen pizza, both for herself and for her daughter.  (PageID.243.)  Though she does not care for it, she can drive a car, and goes shopping with her husband once or twice a week.  (PageID.244.) She further noted that she was able to pay bills as well as count change, though she noted she had previously been fired for giving incorrect change.  (PageID.244.)  She goes to her friends' homes

9

as well as to church.  (PageID.245.)

The record thus indicates that Plaintiff possessed a degree of personal independence, social responsibility and daily living skills expected of her age group.  *See generally Heller*, 509 U.S. at 329.  Because all the elements of the listing are not present–namely deficits in adaptive functioning initially manifested during the development period–Plaintiff cannot meet Listing 12.05(C).  The question, of course, is not whether the Court would have arrived at the same conclusion, but whether there is substantial evidence to support the decision reached by the ALJ. Under these circumstances, substantial evidence supports the ALJ's decision that Plaintiff did not establish deficits in adaptive functioning before age 22 necessary to meet the requirements of Listing 12.05(c).  This claim of error is denied.

### 2.       The ALJ's RFC Evaluation.

A claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8P, 1996 WL 374184 at *1 (July 2, 1996); *see also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 116 (6th Cir., Nov.18, 2010).  It is further defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Pt. 404. Subpt. P, App. 2 § 200.00(c).  With respect to mental abilities, the regulations provide that:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 405.1545(c).  Plaintiff argues that the ALJ's RFC determination fails to sufficiently account for her migraines and intellectual impairments.  The evidence of record in this matter, however, does not support Plaintiff's contention that these impairments impose on her restrictions greater than those found by the ALJ.

A.    *Physical Limitations.*

As regards Plaintiff's migraine headaches, the ALJ observed that Plaintiff received only "minimal care" for this impairment prior to her date last insured.  Indeed, it appears from the record that there were only three occasions where Plaintiff sought treatment from her care providers for her migraine headaches, one of which postdated Plaintiff's date last insured.  (PageID.418, 462, 477.)  On several other occasions Plaintiff did indicate, by circling one of several provided symptoms, that she suffered from headaches.  (*See, e.g.*, PageID. 337, 339, 341, 343, 345, 347.)  And in a treatment note dated after her date last insured she complained of suffering from migraines twice a week.  (PageID.476.)  But treatment notes following many of these pages demonstrate that Plaintiff's primary complaints were of back and leg pain, as well as carpal tunnel syndrome, and that she received very little treatment for her migraines.  Indeed, Plaintiff reported that her migraines were typically well controlled with medication.  (PageID.462.)  Plaintiff's mother-in-law testified that Plaintiff could not always afford her medications.  But this fact, combined with the paucity of treatment for Plaintiff's migraines, points the other way, and does not warrant further limitations in her RFC.

Plaintiff claims that if the ALJ found Plaintiff's migraines to be a severe impairment, then he was required to include limitations for that impairment in the RFC.  She further argues that the limitations included in the RFC do not logically account for her migraines, and that the ALJ

should have included limitations for the time she would be off task due to these migraines. But as the above discussion demonstrates, Plaintiff fails to demonstrate that any additional restrictions are called for. The finding of a severe impairment at step two is a "de minimis" hurdle and "says nothing as to its limiting effects." *Simpson v. Comm'r of Soc. Sec.*, No. 1:13-CV-640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). Here, it appears the ALJ gave Plaintiff the benefit of the doubt by finding her migraines constituted a severe impairment at step two, but found that Plaintiff's complaints of this condition–specifically the time she would be off task–were not supported by the record. The Court finds no error here.

   In a tacked on argument, Plaintiff further argues her RFC, as it relates to her physical impairments, is unsupported by substantial evidence because the ALJ "ignored" the findings of consultative examiner Dr. Michael Geoghegan who stated that Plaintiff "does not appear to have the ability to ambulate, climb stairs or be in a seated or standing position for any length of time." (PageID.362, 571–572.) Plaintiff's discussion of this alleged error is so cursory that it borders on waiver. But even on a review of the merits, Plaintiff's claim does not survive scrutiny. First of all, the ALJ did not ignore the opinion. To the contrary, he explicitly discussed it. (PageID.68.) Moreover, because Dr. Geoghegan is a consultative examiner, the ALJ was not "under any special obligation to defer to [Dr. Geoghegan's] opinion or to explain why he elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011); *see Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). But even if Plaintiff could show error, such error would be harmless. The Sixth Circuit has stated that there is no violation of the procedural requirement for considering medical opinions when such opinion is "so patently deficient that the Commissioner could not possibly credit it." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th

Cir. 2004).  Dr. Geoghegan's statement, taken at face value, would indicate that Plaintiff is unable to walk any distance or indeed ever get up from a reclined, supine, or prone position–a limitation that is clearly not warranted by Plaintiff's own admissions.  As such, the Court finds no error with regards to Plaintiff's physical RFC.

### B.    Mental Limitations.

Turning to the portion of the ALJ's RFC determination that accounted for Plaintiff's intellectual disability, the ALJ stated that he limited Plaintiff "to simple tasks and work-related decisions because of her history of special education that affects her ability to concentrate on detailed tasks."  (PageID.70.)  Plaintiff first argues that the restrictions included in the RFC fail to sufficiently provide for the limitations that were contained in her own testimony, her mother-in-law's testimony, and various unsigned statements made by Plaintiff's husband and mother-in-law to Plaintiff's representative.  (PageID.569.)  But the ALJ found Plaintiff's allegations were not entirely credible and, as demonstrated below, that determination is supported by substantial evidence.  Furthermore, the ALJ discussed the testimony and statements made by Plaintiff's mother-in-law and husband and gave them some weight to the extent they were consistent with the record. (PageID.70.)  Plaintiff has not demonstrated any error in this respect.

Plaintiff also faults the ALJ for failing to adopt the opinion of Dr. Paul Kitchen, PhD, a consultative examiner who administered various intelligence tests to Plaintiff.  (PageID.364–365.) In a note dated September 29, 2014, Dr. Kitchen summarized the test results and concluded that Plaintiff "may have difficulty coping with the requirements of many employment opportunities due to her limited intellectual capacity."  (PageID.365.)  The ALJ gave "little weight" to the opinion because it was not consistent with the record.  Specifically, the ALJ noted "Dr. Kitchen's opinion

is well after the date last insured and does not provide specific limitations.  In addition, there is no record of any IQ testing prior to age 22.  In the Function Report, the claimant stated that she could follow some spoken instructions (Exhibit 4E).  The claimant also performed semiskilled work in the past, and she has a high school diploma (Hearing Testimony)."  (PageID.70.)  Plaintiff claims the ALJ erred for the same alleged reasons she claims the ALJ erred in finding she did not meet a listing.  (PageID.569.)  The Court has already considered, and rejected, these arguments.  Moreover, the ALJ correctly noted the opinion was dated well after Plaintiff's date last insured, and did not indicate whether the opinion related to the relevant time period. Evidence from outside the disability insured period is "minimally probative" and is considered only to the extent that it illuminates a claimant's condition during the period at issue. *See Higgs*, 880 F.2d at 863; *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  Furthermore, the ALJ noted that the opinion did not contain any specific limitations.  Indeed, due to the vague and speculative nature of the opinion, Dr. Kitchen's opinion may very well be consistent with the ALJ's RFC.  *See Wilson*, 378 F.3d at 547 (finding harmless error when an ALJ makes findings consistent with an opinion).

In addition, to the extent Plaintiff claims the ALJ improperly crafted an RFC out of whole cloth because he rejected the only medical opinion in the record regarding her mental limitations, she cannot succeed.  (PageID.569–570.)  When evaluating the claimant's RFC, the ALJ is not required to base his RFC findings entirely on a physician's opinion.  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96–5p) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether

14

an individual is disabled.'").   It is the ALJ who has the ultimate responsibility for assessing a claimant's RFC, based on all of the relevant evidence.  *See* 20 C.F.R. § 404.1545(a); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [her] residual functional capacity.")  It is not the ALJ's burden to seek out medical opinions to prove or disprove a disability claim.  *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Rather, it is Plaintiff's obligation to provide evidence to support her claim of disability.  20 C.F.R § 404.1512(c). The medical evidence in this case has not confirmed the presence of a disabling impairment.

Finally, Plaintiff tacks on another argument that the ALJ's RFC finding is inconsistent with his earlier determination that Plaintiff had moderate difficulties with concentration, persistence, and pace.  (PageID.64.)  Plaintiff depends on the Sixth Circuit case, *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), for support.  (PageID.570.)  This Court has previously considered this very argument, and rejected it, noting that the argument conflates separate steps of the sequential evaluation.  *Mitchell v. Comm'r of Soc. Sec.*, No. 1:14-CV-1307, 2016 WL 304212, at \*6–7 (W.D. Mich. Jan. 26, 2016).  Plaintiff offers no reason why this case should be any different.

For all the above reasons, the Court finds the ALJ's RFC determination as it relates both to Plaintiff's physical and mental impairments is supported by substantial evidence.  As such, Plaintiff's second claim of error is denied.

### 3.    The ALJ's Credibility Evaluation.

At the administrative hearing, Plaintiff testified that she was impaired to an extent far grater than as recognized by the ALJ.  She testified, for example, that she would often stay at

15

home, and would not go to church or visit with friends. (PageID.84–85.) She testified that she has stopped looking for work because she wasn't finding any jobs, that her doctor imposed a twenty pound lifting restriction, and she knew she would be fired from any job in which she would have to work cash registers. (PageID.90–91.) She further thought she could not work because of the pain in her back that went down through her legs. She testified that this pain was of such a severity that she sometimes could not even stand. (PageID.92.) She thought she could not perform a sedentary position because of her difficulties in spelling, reading, and writing. (PageID.92.) She also testified that her carpal tunnel syndrome caused her to drop and break a lot of things. (PageID.92.) She thought she could lift only ten pounds at the most. (PageID.100.) The ALJ found the severity of Plaintiff's allegations were "not entirely credible." (PageID.67.) Plaintiff claims the ALJ erred in making that finding.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")).  It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).  In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ discussed the severity of Plaintiff's allegations as follows:

The undersigned took into consideration the credibility factors pursuant to SSR 96-7p.  As for activities of daily living, the claimant testified that she gets her daughter ready for school.  The claimant stated that she cleans the house and cooks but requires frequent

17

breaks.  The claimant indicated that her husband provides some assistance with the heavier chores (Hearing Testimony).  In the Function Report, the claimant noted that she took care of her daughter, including dressing and feeding her.  The claimant stated that she had no issues taking care of her own personal needs and took care of the dog.  The claimant indicated that she cooked simple meals and washed the dishes with breaks.  The claimant noted that she could pay bills and count change.  The claimant stated that she spent time hanging out with friends and went to church (Exhibit 4E).  The claimant's husband indicated in the Third Party Function Report that she did chores with breaks and took care of their daughter (Exhibit 3E).  The undersigned notes that the claimant's activities of daily living are fairly extensive.  As for work history, Dr. Drew indicated that the claimant was a stay-at-home mom (Exhibit 2F/19-20, 6F/15).  The claimant also had somewhat minimal earning even prior to her alleged onset date (Exhibit 7D).

As for course of treatment, the claimant testified that the doctor limited her to lifting 20 pounds.  The claimant stated that her back pain increases when bending.  The claimant indicated that she can only walk for 5 minutes and carry 5-10 pounds (Hearing Testimony).  The claimant's diagnostic testing showed moderate scoliosis in her thoracic spine and mild degenerative changes in her lumbar spine (Exhibit 2F/22-24).  The claimant had essentially minimal clinical findings with decreased range of motion in her spine but otherwise intact gait and sensation in her extremities.  (Exhibits 2F/7-17, 4F, 6F/15, 17).  The claimant also received only conservative care for her pain, and she noted that the medication worked well (Exhibits 2F/7, 11, 13, 15, 6F/13).  At the hearing, the claimant testified that she has 2-3 headaches a week, which cause nausea (Hearing Testimony).  Yet, the record shows minimal care for the claimant's headaches prior to her date last insured.  The claimant went to the ER in November 2009 for a headache (Exhibit 9F/2-8).  The claimant did not return to the ER until July 2013 for a headache.  The claimant admitted that she recently ran out of Imitrex and that her headaches were typically well controlled with the medication (Exhibit 10F.23-33).  As for the claimant's carpal tunnel syndrome, she testified she has issues holding objects because of it (Hearing Testimony).  The consultative examiner, Dr. Geoghegan, found that the claimant had decreased grip strength bilaterally but that she otherwise had full dexterity and fine finger manipulation (Exhibit 4F).  The claimant's EMG further showed only mild right median mononeuropathy, and she had improvement with medication (Exhibits 2F/11, 19-20).  The claimant testified that she has difficulty reading and understanding

> questions due to a learning disability.  Yet, the claimant admitted to completing her own Function Report (Hearing Testimony).  The claimant underwent IQ testing that showed a full-scale score of 66 but there is no record of any IQ testing prior to age 22.  The claimant also has obtained a high school diploma and driver's license (Exhibit 5F).  The claimant has a history of semiskilled work as well (Hearing Testimony).  In her Function Report, the claimant stated that she could pay bills and count change.  The claimant noted that she could follow some spoke instructions as well (Exhibit 4E).

(PageID.68–69.)  As an initial matter, Plaintiff claims that the ALJ articulated only three reasons for discounting her credibility: her activities of daily living, her status as a stay-at-home mom, and her "minimal earnings." (PageID. 572–574.)  But as the above excerpt makes plain, the ALJ articulated several other reasons, specifically finding her complaints regarding the severity of her migraines and carpal tunnel syndrome to be inconsistent with the record.  Plaintiff does not put forth any argument regarding this portion of the ALJ's discussion.

As for her activities of daily living, Plaintiff claims the ALJ mischaracterized the record regarding these activities and improperly found, from these activities, an ability to perform substantial gainful activity.  (PageID.572–573.)  As the above discussion demonstrates the ALJ did not mischaracterize the record regarding her daily activities.  Moreover, the ALJ did not find, from these activities, an ability to perform substantial gainful activity, rather the ALJ found that these activities evidenced greater exertional abilities than those claimed by Plaintiff.  It was entirely proper for the ALJ to make such a finding.  *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Sec'y of Health & Human Servs.,* 927 F.2d 228, 231 (6th Cir.1990).  Plaintiff's ability to engage in these activities undercut the credibility of her claims of more significant functional limitations.

As for Plaintiff's claims regarding the ALJ's discussion of her prior earnings and

19

status as a stay-at-home mother, any error here is harmless as the undersigned finds that the ALJ gave a more than adequate explanation of his factual finding regarding Plaintiff's credibility and that his finding is supported by more than substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (favorably quoting *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) for the proposition that "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal").

For all the above reasons, this claim of error is denied.

### 4.   The ALJ's Step Five Determination.

As noted above, the ALJ determined that through her date last insured, considering her age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (PageID.72.) As such, the ALJ found Plaintiff not to be disabled under the sequential evaluation. Plaintiff claims the ALJ's finding here is unsupported by substantial evidence.

The gravamen of Plaintiff's argument is that the ALJ could not rely on the VE's testimony that Plaintiff could perform the position of surveillance system monitor. She claims that the position is obsolete, and argues that to rely on such outdated information is in direct conflict with the Sixth Circuit's holding in *Cunningham v. Astrue*, 360 F. App'x 606 (6th Cir. 2010). (PageID.575.) She further argues that the ALJ and VE should have relied on the more recent definition contained in the Occupational Information Network (O*NET). (PageID.575.)

O*NET is an online database that was developed by the North Carolina Department of Commerce through a grant by the United States Department of Labor. *O*Net Resource Center,*

O*NET ONLINE, http://www.onetcenter.org/overview.html (last visited Mar. 27, 2017).  Its website states that it is "the nation's primary source of occupational information." *Id.*  However, while the DOT appears on the list of publications from which the agency can take "administrative notice of reliable job information," the O*NET does not.  *See* 20 C.F.R. § 404.1566(d)(1)-(5).  The ALJ was not required to accept the occupational information contained in the "O*NET Online" or any particular source. Under the regulations, an ALJ is authorized "to use a vocational expert or other specialist" and to "take administrative notice of reliable job information available from governmental and other publications." 20 C.F.R. § 404.1566(d), (e).  Indeed, an ALJ is "within his rights to rely solely on the vocational expert's testimony," even if that testimony conflicts with the DOT, because "[t]he social security regulations do not require the [Commissioner] or the expert to rely on classifications in the Dictionary of Occupational Titles." *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995); *see also* SSR 00–4p, 2000 WL 1898704 at *2 (providing that "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT," but cautioning that "[n]either the DOT nor the VE . . . evidence automatically 'trumps' the other when there is a conflict").

Plaintiff's reliance on *Cunningham* is misplaced.  The Sixth Circuit's unpublished decision "did not hold that the DOT is an unreliable or out-of-date source. Rather, the court acknowledged that pursuant to the regulations the DOT is a publication of which the ALJ may take notice." *Earls v. Comm'r of Soc. Sec.*, No. 1:09 CV 01465, 2011 WL 3652435, at *7 (N.D. Ohio Aug. 19, 2011) (citing *Cunningham*, 360 F. App'x at 615).  In *Cunningham*, Mr. Cunningham died while his lawsuit challenging the Commissioner's decision denying his application for DIB benefits was pending. The district court affirmed the Commissioner's decision. A divided appellate panel

found that the administrative record was "insufficient to address Cunningham's claim" and remanded the matter for further administrative proceedings. 360 F. App'x at 615. Judge Ryan dissented, noting that the majority had departed from the proper scope of judicial review in order to achieve this result. *Id.* at 616 (Ryan J. dissenting). No subsequent Sixth Circuit decision has cited the unpublished *Cunningham* decision or questioned the "reliability" of VE testimony in a similar fashion. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 851–53 (6th Cir. 2010); *see also Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 200–01 (6th Cir. 2010).

But even if the numbers were not obsolete, Plaintiff further argues that the numbers were not reliable because the DOT does not contain specific job numbers and that numbers of available positions provided by the VE included portions of a larger group of occupations pursuant to the Bureau of Labor Statistics. (PageID.576.) But Plaintiff ignores the fact that the VE did not rely solely on the DOT, but also testified regarding based on his experience. Plaintiff provides no argument why the ALJ's testimony in this regard is unreliable. *See Petry v. Colvin*, No. 3:12-CV-2655, 2013 WL 3245330, at *13 (N.D. Ohio June 26, 2013). Indeed, Plaintiff did not even object to this testimony at the hearing. (PageID.135.) "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec.*, No. 1:11–cv–1290, 2012 WL 4434078 at 3 (N.D. Ohio Sept. 24, 2012) (*citing Hammond v. Chater*, No. 96–3755, 1997 WL 338719 at *3 (6th Cir. June 18, 1997) (finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal)); *see also Lyon v. Comm'r of Soc. Sec.*, No.

22

1:11–cv–1104, 2013 WL 1149967 at *4 (W.D. Mich. March 19, 2013) (concluding the plaintiff's challenge to the VE's testimony was waived because she failed to object to the testimony at the administrative hearing).

Even assuming that all the security surveillance monitor jobs were eliminated, however, the remaining 1,100 regional and 32,000 national positions as a callout operator identified by the VE would still constitute substantial evidence supporting the Commissioner's decision. *See Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir.1993) (1,400 is a significant number and collecting cases where as few as 174 positions were found to be a significant number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988) (1,350 is a significant number); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375 (6th Cir. 2006) (870 jobs is a significant number). The section of Plaintiff's brief attacking the ALJ's step five finding makes no mention of the callout operator position. Admittedly, earlier in her brief when attacking the RFC determination, Plaintiff claims that she is not capable of performing the tasks required by the position. (PageID.569.) But Plaintiff does not claim such work is incompatible with the RFC, only that it is incompatible with the complaints she made at the administrative hearing as well as those complaints made by other third parties. (PageID.569.) The ALJ was not required to incorporate these complaints into the hypothetical to the RFC.

It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) ("An ALJ is only required to incorporate into a hypothetical question those limitations he finds credible."); *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is [ ] 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those

limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The hypothetical question the ALJ posed to the VE was accurate and supported by substantial evidence. The VE's testimony in response provided substantial evidence supporting the ALJ's step five decision.  Accordingly, the ALJ did not err in failing to incorporate Plaintiff's complaints into his hypothetical to the VE.

For all the above reasons, this claim is therefore rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is supported by substantial evidence and is therefore **AFFIRMED.**

A separate judgment shall issue.


Dated:  March 29, 2017                             /s/ Janet T. Neff_____
                                                   JANET T. NEFF
                                                   UNITED STATES DISTRICT JUDGE